UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

WILLIAM KIRST and
CHRISTINA KIRST,
*Derivatively on Behalf of Nominal Defendant*
NOVAVAX, Inc.,

    Plaintiffs,

v.

STANLEY C. ERCK,
MARGARET G. McGLYNN,
RACHEL KING,
GREGG ALTON,
JAMES F. YOUNG,
RICHARD DOUGLAS,
RAJIV I. MODI,
MICHAEL A. McMANUS, JR.,
DAVID MOTT,
GREGORY F. COVINO,
JOHN J. TRIZZINO and
NOVAVAX, INC.,

    Defendants.

Civil Action No. TDC-22-0024

**MEMORANDUM OPINION**

Plaintiffs William and Christina Kirst filed this shareholder derivative action against nominal defendant Novavax, Inc. ("Novavax"), the members of its Board of Directors ("the Board"), and certain of its officers in the Circuit Court for Montgomery County, Maryland, alleging state law claims of insider selling and misappropriation of information, breach of fiduciary duty, waste of corporate assets, unjust enrichment, abuse of control, and gross mismanagement based on the management and control of the company in relation to its plans and efforts to develop and market a vaccine for COVID-19. After Defendants removed the case to this Court, Plaintiffs

filed a Motion to Remand, which has been fully briefed. Having reviewed the submitted filings, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion to Remand will be GRANTED.

## BACKGROUND

Plaintiffs filed their Complaint electronically with the Circuit Court of Montgomery County ("the Circuit Court") on Tuesday, December 28, 2021. The Circuit Court was closed on Friday, December 31, 2021, and a snowstorm on Monday, January 3, 2022 disrupted court hours and functions. On Tuesday, January 4, 2022, a paralegal for Plaintiffs' counsel called the Circuit Court to inquire about the status of the issuance of the summonses and was told that they had not been issued because of the holiday and storm, but that they would be mailed to Plaintiffs' counsel soon. Meanwhile, Defendants, based on electronic docket searches, learned of the filing of the Complaint on January 3, 2022, sent an attorney to the courthouse to secure a copy of it on January 4, and filed a Notice of Removal of the case to federal court on January 5, 2022, before any summonses had been issued. On or about January 10, 2022, Plaintiffs' counsel received a Notice of New Case Number from the Circuit Court, dated January 6, 2022, accompanied by a note stating that the summonses would be sent once an order was signed designating the case to the Circuit Court's Business and Technology Case Management Program.

In their Notice of Removal, Defendants asserted both federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332 as bases for removal. As to federal question jurisdiction, Defendants assert that this case presents a federal question because the claims are, in essence, claims for alleged violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (2018).

As for diversity jurisdiction, Plaintiffs are citizens of Florida, and none of Defendants are citizens of Florida. Four of Defendants are citizens of Maryland ("the Maryland Defendants"), but Defendants assert in the Notice of Removal that removal is proper because none of the Maryland Defendants had been served at the time of removal.

## DISCUSSION

In their Motion to Remand, Plaintiffs assert that there is no federal question jurisdiction and that even if diversity jurisdiction exists, removal was improper because it violated the forum defendant rule set forth in 28 U.S.C. § 1441(b)(2), which generally bars the removal of a case where one or more of the defendants who has been properly joined and served is a citizen of the forum state.

### I.    Federal Question Jurisdiction

Defendants argue that without even addressing the forum defendant rule, which applies only when diversity jurisdiction is the sole basis for removal, removal was proper based on federal question jurisdiction. Federal question jurisdiction exists for "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (2018). To determine whether a claim "arises under" the laws of the United States, courts abide by the "well-pleaded complaint rule," assessing whether the plaintiff's cause of action, as stated on the face of the complaint, asserts a claim for which "federal law creates the cause of action." *See Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 807–08 (1986). Notably, the plaintiff is the "master of the complaint" and may keep the complaint out of federal court simply by "eschewing claims based on federal law." *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987). Here, the Complaint specifically alleges only state law causes of action.

3

Beyond this general rule, a claim rooted in state law may "arise under" federal law and fall within the scope of federal question jurisdiction in one of two narrow instances: (1) when the claim arises under a particular area of law that is completely preempted by Congress, *see Pinney v. Nokia, Inc.*, 402 F.3d 430, 449 (4th Cir. 2005); and (2) "where the vindication of a right under state law necessarily turn[s] on some construction of federal law," *Merrell Dow*, 478 U.S. at 808–09. Nevertheless, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Id.* at 813. This second exception applies only in "narrow" circumstances in which "a plaintiff's ability to establish the necessary elements of his state law claims must rise or fall on the resolution of a question of federal law." *Old Dominion Elec. Coop. v. PJM Interconnection, LLC*, 24 F.4th 271, 280 (4th Cir. 2022).

Defendants argue that the second exception applies here because the Complaint "*directly* premises its liability theory on Defendants' supposed violations of federal securities laws." Opp'n at 17, ECF No. 25. A review of the Complaint establishes that this claim is incorrect. Although the Complaint makes one reference to unspecified violations of federal law, makes one reference to a certification of compliance with certain federal securities laws, and makes several references to forms required by the Securities and Exchange Commission in which false or misleading statements were made, the stated cause of actions are all state law violations, and the Complaint's descriptions of the alleged violations of state law reference only state common law or corporate law principles and are not premised on a determination whether any defendant violated any particular provision of federal law. Thus, adjudication of Plaintiffs' state law claims does not "turn[] on some construction of federal law." *See Merrell Dow*, 478 U.S. at 808.

As a result, Defendants' reliance on *D'Alessio v. New York Stock Exchange, Inc.*, 258 F.3d 93 (2d Cir. 2001), is misplaced because in that instance, the "gravamen" of the state law claims

was that the defendants had "conspired to violate federal securities laws" and "failed to perform its statutory duty, created *under federal law*, to enforce its members' compliance with those laws," and the complaint was "replete with allegations" of conspiring to violate the federal securities laws. *Id.* at 101–02, n.5. Likewise, Defendants' citation of *Landers v. Morgan Asset Management, Inc.*, No. 08-2260, 2009 WL 962689 (W.D. Tenn. Mar. 31, 2009), an unpublished, out-of-circuit case, is unpersuasive, as in that case, the plaintiffs had "recite[d] violations of federal statutes not only in their factual allegations, but also in stating their claims," had "argue[d] that violation of federal law [was] an 'alternate theory,'" and "explicitly asked the Court to evaluate Defendants' actions in light of requirements imposed by federal securities law." *Id.* at *6, *8. The complaint therefore raised "important, disputed federal questions that [were] necessary to the outcome of their case." *Id.* at *10. Unlike in those cases, the present Complaint does not link the state law claims to alleged violations of federal law in this way.

The Court thus finds that federal question jurisdiction does not exist and therefore does not provide a basis on which to justify the removal of this case.

## II.   Diversity Jurisdiction

Although Plaintiffs acknowledge that diversity jurisdiction exists, they argue that removal was improper, and thus that remand is warranted, because the removal violated the forum defendant rule, which provides that "[a] civil action otherwise removable solely on the basis of [diversity] jurisdiction ... may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). Defendants assert that the forum defendant rule is inapplicable because at the time of removal, none of the defendants had been served.

5

Courts are required to construe removal statutes narrowly, *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941), because "the removal of cases from state to federal court raises significant federalism concerns," *Barbour v. Int'l Union*, 640 F.3d 599, 605 (4th Cir. 2011). This requirement arises from "Congress' clear intention to restrict removal and to resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993).

Although the record is clear that Defendants engaged in a "snap removal" of this case by which they used electronic monitoring of court filings to identify and remove this case before Plaintiffs had any opportunity to serve the Maryland Defendants, Defendants argue that the plain language of § 1441(b)(2), which bars removal when "any of the parties in interest properly joined and served" is a citizen of the forum state, permits removal even under these circumstances and should end the inquiry. Several United States Courts of Appeals have adopted this view. *See Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019) ("Section 1441(b)(2) is inapplicable until a home-state defendant has been served in accordance with state law; until then, a state court lawsuit is removable under Section 1441(a) so long as a federal district court can assume jurisdiction over the action."); *Encompass Ins. Co. v. Stone Mansion Rest., Inc.*, 902 F.3d 147, 152 (3rd Cir. 2018) (holding that the "plain meaning" of 28 U.S.C. § 1441(b)(2) "precludes removal on the basis of in-state citizenship only when the defendant has been properly joined and served"); *Texas Brine Co. v. Am. Arb. Ass'n*, 955 F.3d 482, 487 (5th Cir. 2020) (allowing removal because "the text is unambiguous"). These cases acknowledge that a statute should not be interpreted so as to lead to "absurd or bizarre results" but conclude that the snap removals at issue in those cases did not meet this standard. *Encompass Ins. Co.*, 902 F.3d at 152–53; *see Gibbons*, 919 F.3d at 705–07; *Texas Brine*, 955 F.3d at 486–87.

In contrast, in *Goodwin v. Reynolds*, 757 F.3d 1216 (11th Cir. 2014), the United States Court of Appeals for the Eleventh Circuit was presented with a similar scenario to the present: two non-forum defendants removed the case to federal court before the forum defendant had been served and, as here, before any defendant had been served. *Id.* at 1218. Although the court was not directly presented with the question whether this removal violated the forum defendant rule, in affirming the district court's dismissal of the case to allow the plaintiff to re-file in state court, the court stated that "[t]he forum-defendant rule clearly contemplates Plaintiff's ability to defeat Defendants' purported right of removal in this case." *Id.* at 1221. The court reasoned that the original purpose behind the forum defendant rule was "to prevent gamesmanship by plaintiffs," namely fraudulent joinder to defeat diversity jurisdiction, and recognized a defendant's race to the courthouse to remove a case before a forum defendant could be served as its own form of "gamesmanship." *Id.* The Eleventh Circuit's analysis echoes the United States Supreme Court's statement in *Pullman Co. v. Jenkins*, 305 U.S. 534 (1939), decided before the passage of the current forum defendant rule, that in cases of fraudulent joinder, "the fact that the resident defendant has not been served with process does not justify removal by the non-resident defendant," because "the non-resident defendant should not be permitted to seize an opportunity to remove the cause before service upon the resident co-defendant is effected." *Id.* at 541.

The United States Court of Appeals for the Fourth Circuit has not decided this question, but it follows the general rule that courts "will not . . . adopt a 'literal' construction of a statute if such interpretation would thwart the statute's obvious purpose or lead to an 'absurd result.'" *Stone v. Instrumentation Lab'y Co.*, 591 F.3d 239, 243 (4th Cir. 2009). When faced with this issue in a recent similar case, this Court, relying in part on the analysis in *Goodwin*, granted a motion to remand where the plaintiffs had received the summonses on the morning of April 23, 2019, and

the non-forum defendant removed the case that afternoon, before service was effected on the forum defendant, such that the removal "was not an organic consequence of the normal unfolding of [the] lawsuit, but instead an artificial filing aimed at exploiting a perceived technicality." *Alfasigma USA, Inc. v. ExeGi Pharma, LLC*, No. TDC-19-1180, 2019 U.S. Dist. LEXIS 186781 at *1, *5, *9 (D. Md. Oct. 15, 2019). This Court reasoned that in context, the forum defendant rule in 28 U.S.C. 1441(b)(2) is most fairly read as focusing on generally barring removal by an in-state defendant, but not if that defendant was improperly joined and served for purposes of defeating federal jurisdiction. *Id.* at *5. Finding that the snap removal "was intended specifically to circumvent the requirements of the forum defendant rule," the Court saw "no meaningful distinction between" the "gamesmanship" of the snap removal and "the practice of fraudulent joinder that the forum defendant rule was originally intended to address" and concluded that permitting the snap removal would leave the plaintiff "powerless to keep the matter in state court, thereby depriving a plaintiff of the fullness of its right to choose its forum." *Id.* at *8–9.

Although judges in this District have reached different results on this same question, as the practice of snap removals proliferates, the growing trend is to embrace a functional reading of 28 U.S.C. § 1441(b)(2) and the Eleventh Circuit's reasoning in *Goodwin* and to decline to permit removal. *See, e.g., Medish v. Johns Hopkins Health Sys. Corp.*, 272 F. Supp. 3d 719, 725–27 (D. Md. 2017) (noting that the forum defendant rule was "designed to prevent gamesmanship" and thus concluding that "[t]he propriety of retaining a case in federal court jurisdiction cannot hinge on something as irrelevant to the purpose of the forum defendant rule as winning a race"); *Billie v. Vallance*, No. RDB-21-0477, 2021 WL 3725348, at *3–4 (D. Md. Aug. 23, 2021); *Teamsters Loc. 677 Health Servs. & Ins. Plan v. Friedman*, No. CCB-18-3868, 2019 WL 5423727, at *4 (D. Md. Oct. 23, 2019); *Caillouet v. Annapolis Yacht Co., LLC*, No. ELH-16-1698, 2016 WL 8737484,

at *7 (D. Md. Aug. 5, 2016). *But see Al-Almeri v. Johns Hopkins Hosp.*, No. GLR-15-1163, 2015 U.S. Dist. LEXIS 174300, at *2 (D. Md. June 24, 2015) (permitting removal). At least one judge has rejected the allegedly plain reading of the statute as leading to "an absurd result contrary to the purpose of the statute." *See Teamsters Loc. 677*, 2019 WL 5423727, at *3; *see also Billie*, 2021 WL 3725348, at *4 (finding that denying the motion to remand "would start to move these proceedings into the zone of 'absurdity'").

The facts of the present case provide an even more clear basis to apply the reasoning of *Goodwin, Alfasigma,* and *Medish*. While in *Alfasigma* the plaintiffs had at least a momentary window in which to serve the forum defendant, here, Defendants removed this case before the Circuit Court had even issued the summonses, such that it was physically impossible for Plaintiffs to serve any forum defendant before removal. *See Alfasigma*, 2019 U.S. Dist. LEXIS 186781, at *2–3. This was not a race to the courthouse which Plaintiffs happened to lose; this was gamesmanship by Defendants that was specifically intended to "circumvent the requirements of the forum defendant rule" and was guaranteed to succeed in depriving Plaintiffs "of the fullness of [their] right to choose [their] forum." *Id.* at *7 (citing *Akers v. Norfolk & W Ry. Co.*, 378 F.2d 78, 80 (4th Cir. 1967) (noting, in a case involving a question of *forum non conveniens*, "the primary right of the plaintiff to choose his forum," which is "a selection not easily to be overthrown")). Under these facts, Defendants' interpretation of the forum defendant rule leads to an absurd result and thus will not be accepted by the Court. *See Stone*, 591 F.3d at 243; *Teamsters Loc. 677*, 2019 WL 5423727, at *3. The Motion to Remand will therefore be granted.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand will be GRANTED. A separate Order shall issue.

Date: July 21, 2022

THEODORE D. CHUANG
United States District Judge